IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

FILED
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TENN
NOV 27 2002
BY BM
DEPUTY CLERK

UNITED STATES OF AMERICA )
)
vs. ) CASE NO.: 3-00-00095
)
THOMAS NICHOLS and )
CARLTON SMITH, )
)
Defendants. )

---

SENTENCING HEARINGS
October 11, 2002
Volume X

---

BEFORE THE HONORABLE SENIOR JUDGE THOMAS A WISEMAN, JR.
DISTRICT JUDGE

---

APPEARANCES:

For the United States: WILLIAM M. COHEN
WILLIAM LEE DENEKE
Assistant U.S. Attorneys
961-A U. S. Courthouse
Nashville, Tennessee 37203

For the Defendant Nichols: MICHAEL J. LOVE
Attorney at Law
215 South Second Street
Clarksville, Tennessee 37040

For the Defendant Smith: CARL DOUGLAS THORESEN
Assistant Federal Defender
810 Broadway
Nashville, Tennessee 37203

---

CHARLOTTE H. SLOAN, RPR
Official Court Reporter
837-A U.S. Courthouse
Nashville, Tennessee 37203
Telephone: (615) 726-0355



224

## LIST OF EXHIBITS


| | Page |
|---|---|
| GOVERNMENT'S 1: Copy of conviction of Smith | 1352 |
| GOVERNMENT'S 2: 302 report of Murray | 1353 |
| DEFENDANT SMITH'S 1: Chattanooga transcripts | 1360 |
| DEFENDANT SMITH'S 2: Affidavit of Hendrix | 1360 |
| DEFENDANT SMITH'S 3: Sentencing Transcript from Chattanooga | 1360 |
| DEFENDANT SMITH'S 4: Affidavit of Thoresen re: enforcement of subpoena | 1360 |
| DEFENDANT SMITH'S 5: Copy of J and C for Crisp | 1361 |
| DEFENDANT SMITH'S 6: Copy of J and C for Nichols | 1361 |
| DEFENDANT SMITH'S 7: Affidavit of Thoresen re: Government's response | 1362 |
| DEFENDANT SMITH'S 8: Statement of Carlton Smith | 1362 |
| DEFENDANT SMITH'S LATE-FILED 9: Affidavit of Bill Ortwein | 1363 |

OCTOBER 11, 2002

THE COURT: The matter set for hearing this morning is sentencing in the case of United States v. Carlton Smith and United States v. Thomas Albert Nichols. Is the Government ready?

MR. COHEN: We are, Your Honor.

THE COURT: Defendant Nichols ready?

MR. LOVE: Yes, Your Honor, we are.

THE COURT: Defendant Smith ready?

MR. THORESEN: Present and ready, Your Honor. I have a preliminary matter.

THE COURT: I will hear you.

MR. THORESEN: It's come to my attention, Your Honor, that Mr. Nichols has filed a Motion for a Downward Departure, which in part alleges that Mr. Smith has committed an unrelated crime to this Indictment. And I think it's -- (a) if this Court is going to consider anything about that incident, I think that is prejudicial and has nothing to do with this Indictment as it relates to Mr. Smith, and it is inappropriate to have it in the Record or any matter related to that.

THE COURT: What you are saying is that if Mr. Nichols is moving for downward departure based upon his alleged cooperation with the Government in giving information about other criminal activity of Mr. Smith; is

that correct?

MR. THORESEN: That he alleges is other criminal activity about Mr. Smith. And specifically, Your Honor, if it's about the issue that we danced and addressed with in the trial of this case.

THE COURT: I will tell you this, Mr. Smith and Mr. Thoresen, I will not consider that in determining Mr. Smith's sentence. Now, I will hear Mr. Nichols insofar as he wants to urge the Court to consider a downward departure for that reason. But it will not be considered detrimentally to your client, Mr. Thoresen.

MR. THORESEN: All right. And I will -- based upon that assertion, I don't see any need whatsoever then to ask the Court to have separated and separate sentencing hearings. If that is a concern, I would like to have that, but if it's not --

THE COURT: It is not a concern to me at all.

MR. THORESEN: All right. Thank you, Your Honor.

THE COURT: Yes, sir. All right, Mr. Cohen, does the Government have any objections to the factual findings and Guideline computations in the Pre-sentence Report as to Mr. Smith?

MR. COHEN: No, sir.

THE COURT: Does the Government have any as to Mr. Nichols?

MR. COHEN: No, Your Honor.

THE COURT: All right. We will take up now the objection, Mr. Thoresen, that you have to the Guideline applications and factual findings of the Pre-sentence Report as it relates to Mr. Smith.

MR. THORESEN: Yes, Your Honor, I have a number of Exhibits to file, most of which are for the Record. I would like to file -- one is a Transcript, Your Honor, of the Chattanooga trial. I am not asking that you read the Transcript of the Chattanooga trial. I do have a summary, however, of certain pertinent parts that relate to the -- my Motion for a Downward Departure. In addition to that, I have the statement of Carlton Smith, I have an affidavit of myself that I have filed in support of my motion to enforce the subpoena, which I would ask the Court to consider with respect to the sentencing issues, primarily relating to -- there are facts in there that -- not for that purpose. I don't want to rehash that again. But there are facts in that that will relate to sentencing issues regarding disparate treatment and my Motion for a Downward Departure in that respect. And I would like to adopt that in that respect.

I also have the Transcript of the sentencing proceeding in Chattanooga, which is relative to that and several other documents of that kind which I want to

introduce into the Record and have them made part of the Record.

THE COURT: They will be received.

MR. THORESEN: After my argument, Your Honor, if I could have the opportunity to do that.

THE COURT: Yes, sir. I was hoping that we could dispose of your objections to the factual findings and the Guideline computations first, before we get to those matters. But let me hear you and your objections.

MR. THORESEN: Your Honor, I am going to start in the back end. And my objections to the Pre-sentence Report are lengthy, and I don't intend to go over every one of them.

THE COURT: If you want me to consider them, I want you to go over them, or at least mention them.

MR. THORESEN: All right, Your Honor, I will go over them. My objection, number one, relates to the fact that I think the Pre-sentence Report should be more specific regarding the subject matter offense. And that is, it ought to specify that the subject matter case involved the First American Bank, which occurred on December 13, 1996, in Clarksville. That relates to my second matter, Your Honor, which contains, I think, a more accurate statement of this entire case relating to the Chattanooga trials, the Knoxville extortions, the Chattanooga extortions, and all of

these matters which are -- and it contains a recitation of the Counts in which everyone was charged in Chattanooga, and is a more factual, accurate description of what has occurred throughout this case, other than what is included in the Pre-sentence Report as filed, which was just a summary explanation.

THE COURT: It's sufficient for the purposes. So that objection will be overruled.

MR. THORESEN: My next objection, Your Honor, is -- relates to Item Number 3, in which it's alleged that the -- where Mr. Smith received -- well, let me move ahead to my objections. I think number three, Your Honor, just relates to what Mr. Nichols was convicted of and --

THE COURT: Would you please relate your objection to a paragraph in the Pre-sentence Report, numbered paragraph?

MR. THORESEN: Yes, Your Honor.

THE COURT: So I can follow you, Mr. Thoresen.

MR. THORESEN: Item Number 5, Your Honor, is a recitation of the calculations that were made by Mr. Smith in -- or made against Mr. Smith in the Pre-sentence Report in Chattanooga. And --

THE COURT: Does that relate to a particular paragraph in the Pre-sentence Report?

MR. THORESEN: It relates to many of them after

that time. And I will start with Number 6. He received a five-level enhancement for brandishing, displaying or possessing a firearm during the commission of the offense in the Chattanooga sentence. He received a four-level -- Number 7 -- he received a four-level upward adjustment in that a person was abducted to facilitate the commission of the offense in Chattanooga. Number 8, Mr. Smith received a four-level upward adjustment, since the loss was more than $800,000. Pursuant to Number 9, two-levels were added --

THE COURT: Let me see if understand you, Mr. Thoresen. What you are complaining about now is the fact that the same enhancements are being used in this Pre-sentence Report as were used to enhance the offense in Chattanooga?

MR. THORESEN: Correct, Your Honor.

THE COURT: Am I correct?

MR. THORESEN: That is correct.

THE COURT: All right. Now, let me just respond to this and rule on it. (2)(b)(3).1 of the Sentencing Guidelines is the general Guideline for all robberies. You enhance it if it's done to a financial institution, you enhance it if it's done to with a weapon. And there are other enhancements that apply to the general robbery statute and general robbery Sentencing Guideline.

Now, the fact that the Chattanooga robbery

required enhancements and the Clarksville robbery required many of the same enhancements does not hurt your client at all, Mr. Thoresen. It's just -- it's irrelevant to this sentencing. So your objection is overruled. Now, pass on to the next one.

MR. THORESEN: We also allege, Your Honor -- generally beyond that. I will go into the specific objections. We allege, Your Honor, that what occurred in Chattanooga with respect to the sentencing constitutes collateral estoppel and res judicata, both as to those specific instances that we are talking about and the failure of the Government to make certain objections to the Pre-sentence Report in Chattanooga.

THE COURT: Spell that out for me.

MR. THORESEN: For example, our argument is that if he has received -- and this relates to what you just ruled against, obviously, because that motion related to duplicate sentencing for the same issue, but not all of it does. Our argument is in addition to duplicate sentencing, it constitutes res judicata and collateral estoppel and, therefore, it's the law of the case in terms of the issue or case preclusion, and it cannot be done twice. Now, Your Honor has already ruled on that with respect to duplicative aspect, and this is just another --

THE COURT: And I am going to rule precisely the

same way as to the argument you are now making.

MR. THORESEN: I understand.

THE COURT: It is not res judicata, it is not claim for preclusion, it's not issue preclusion. It had to do with the Chattanooga robbery and the enhancements of the Chattanooga robbery, and these have to do with the Clarksville robbery and the enhancements of the Clarksville robbery, Mr. Thoresen. There is absolutely no reason why it should not be applied. Now, when we get to sentencing, I am going to run them concurrently to the extent that the Sentencing Guidelines prescribe. Now, go ahead. Move on to something else. Move on to something that has got some merit, Mr. Thoresen.

MR. THORESEN: There is one other aspect -- I hear you -- that is not related to that, and that is the failure of the Government to assert certain Guidelines that weren't asserted in Chattanooga that are asserted here, such as --

THE COURT: Which ones?

MR. THORESEN: Carjacking.

THE COURT: The carjacking is out now because I am using the 1995 statute, the 1995 Sentencing Guidelines. And carjacking was not in the 1995 Sentencing Guidelines. So that is not considered. There has been a revised Pre-sentence Report filed that eliminated that, and you

should have received it.

MR. THORESEN: In the Pre-sentence Report, we object, Your Honor, to the utilization of the restraint, physical restraint enhancement in this case, as well as an abduction restraint.

THE COURT: That, again, Mr. Thoresen, has been taken care of in the revised Pre-sentence Report. Both of them are not used.

MR. THORESEN: The other objection, Your Honor, relates to that Guideline of Mr. Smith receiving a two-level enhancement for using a minor to commit a crime.

THE COURT: Yes, sir.

MR. THORESEN: And --

THE COURT: The Court finds that that is the case in this. He used the child to respond to his mother's telephone call and told the child to not indicate that anything was wrong and he used the child to lure the mother to the house, and it's very appropriate that that two-level enhancement be used. Your objection is overruled.

You filed an objection to the enhancement for particularly vulnerable individuals, one of whom was the seven-year old child and the 60-plus-year-old man with one hand and Parkinson's Disease. Now, you filed that, but you haven't mentioned it yet.

MR. THORESEN: That was predicated, Your Honor,

on the double enhancement in Chattanooga.

THE COURT: Well, the Court finds that is an appropriate enhancement in this case.

MR. THORESEN: I think that deals with the specific objections that I have filed, Your Honor.

THE COURT: All right.

MR. THORESEN: I do have a Motion for Downward Departure.

THE COURT: I understand. Before we get to that, then, the Court has ruled on your objections as they were raised. And the Court finds that there is no merit to any of your objections. They are all overruled. And the Court will now tentatively find before consideration of any Motions for Downward or Motions for Upward Departure, that --

MR. THORESEN: Your Honor, could I --

THE COURT: Yes, sir.

MR. THORESEN: I did neglect one thing and that is the obstruction issue. And I want to file a statement by Mr. Smith regarding that issue.

THE COURT: I am not going to apply that. I will take that back. You are talking about where he allegedly pointed at the witness and then --

MR. THORESEN: Yes, sir.

THE COURT: And then --

MR. THORESEN: Yes, Your Honor.

THE COURT: I remember that from the trial. It was brought up in the trial itself to my attention, and I disregarded it at the time. I am going to disregard it now. I don't know that that happened. I didn't see anything. I am not going to apply it. There is no application for obstruction of justice. Your objection is noted, Mr. Cohen, but I am not going to do that.

Now then, deleting the obstruction of justice two points, which appears in Paragraph 43 of the revised Pre-Sentence Report, will reduce the total offense level to 40, a Criminal History Category of II, resulting in an imprisonment range of 324 to 405 months, and a supervised release range of three to five years. Fine range, of $25,000 to $250,000, and a Special Assessment of $100 on each of Counts 1 and 2, or totaling $200. Now then, I will hear you on your Motion for Downward Departure, Mr. Thoresen.

MR. THORESEN: Your Honor, I have filed a Motion for a Downward Departure, and that is essentially predicated on disparity of sentencing. Now, it has been ameliorated by virtue and to some degree by the decision the Court just made. And the decision, the argument, Your Honor, is based on the aspect of unreasonable disparity in sentencing, and another basis. That is on the basis of the Nelson case,

Your Honor, where the Court has the authority to grant a downward departure on the basis of not only disparity in sentencing among co-conspirators, but for similar offenses, which I have cited the statutory basis for that in the Guidelines -- in the statutes which created the Guidelines, which directs the Court to remove any issues of disparity in sentencing by virtue of fashioning a sentence that is comparable in terms of what co-conspirators received and the co-conspirators for the other offenses in Chattanooga. That is specifically articulated in my motion, Your Honor.

In addition to that, I have filed a motion -- the Motion for a Downward Departure is predicated on the basis of the Witte case, which says that -- and I understand what your Court's ruling is, that this is merged into the Chattanooga cases. And the Witte case talks about a downward departure when duplicate criminal sentencing has been used to enhance a sentence but is not otherwise prohibited by the Fifth Amendment of the United States Constitution. Your Honor has already ruled in one way against that. It does not affect the disparity motion here of what sentences people received in Chattanooga in one case for Mr. Crisp, for example, of committing two of these extortions.

THE COURT: Did he get 627 months?

MR. THORESEN: I think so, Your Honor.

THE COURT: How is that disparate?

MR. THORESEN: Well, he had two 924(c)'s and they were commission of two offenses. And so Mr. Nichols' offense is a better benchmark of that, although Mr. Crisp's is, too, in Chattanooga. Mr. Nichols' offense --

THE COURT: He got 295?

MR. THORESEN: Yes, sir.

THE COURT: Your man got 180; is that right?

MR. THORESEN: That is correct. He was not charged -- he was charged with conspiracy and he was charged with money laundering. He received the statutory maximum for both offenses that he was charged with, all of which related to the Clarksville robbery. And I know Your Honor knows this, but Mr. Smith wants this clarified, that -- I know Your Honor knows that the enhancement that Mr. Smith received in Chattanooga was for the Clarksville robbery. He had some ambiguity about whether you knew that or not, and it is specified in my briefs, and I am convinced you know that, but I wanted to state that for the Record so he would be clear that you know that.

That is the basis of my motion, and I ask you to downward depart to create more parity in sentencing. By virtue of the commission of one offense, Mr. -- as determined here, Mr. Smith is going to receive a sentence far greater than what he received in Chattanooga. And our

argument is -- or what Nichols received in Chattanooga, and on the basis of what Crisp received, relatively, compared to each case when you analyze each case. And this is a -- but for this bifurcation, the separation of these cases -- had the Nashville case been brought in Chattanooga that should be the standard. And I know Your Honor has found a higher offense level than what occurred in Chattanooga, but it's our argument that the offense level, as determined for Mr. Smith in Chattanooga, that being fair, totally fair about the removal of this case and everything else, that should be the standard that should be applied here. And if you had done that with respect to a departure, and if you do that with respect to a departure, if you downward depart to what Smith would have received by virtue of his -- the calculation of his Guidelines in Chattanooga for the substantive offense, then substantial fairness is attained.

By virtue of bringing this case in Nashville, that offense level and what has occurred here and the use of these enhancements is different from what he would have received in Chattanooga and it's substantially higher.

THE COURT: Mr. Thoresen, how can you presume that Judge Collier would have read the Sentencing Guidelines any differently than I have read them or prepared a PSR report from his Probation Office any differently from the

way that it's been prepared in this --

MR. THORESEN: Because -- I am not presuming. I am basing it on fact, which is going to be introduced as part of the Record in this case, Your Honor. Mr. Smith's offense level for the substantive offense in the Chattanooga Guideline -- in the Chattanooga Pre-sentence Report was calculated at Level 39 and a total Guideline range was determined in Chattanooga. And Judge Collier adopted that Guideline in the Transcript. He used that Guideline by virtue of the substantive offense in calculating his Chattanooga Guideline, although it was for these two different offenses, to apply that to Mr. Smith for getting the statutory maximum. So that is how it was done. The offense level was calculated in Chattanooga, the Guideline range was calculated in Chattanooga, and it was all for the Clarksville robbery, and that was the basis of utilizing it and that is the basis of our motion.

Otherwise, Your Honor, you have the circumstance of -- the potential circumstance of forum shopping. You have a situation where -- which is prohibited by the Guidelines where one Defendant could receive one sentence in Chattanooga and on the same facts the same case can come to Nashville and receive a greater sentence. And that is prohibited by the purpose and the intent of the Guidelines, which was designed to avoid disparity generally

in sentencing, but particularly egregious is to take a circumstance where one person can go to Chattanooga and get -- for the same case, the same facts, and get a less sentence than what one would get in Nashville.

THE COURT: Doesn't he have a right to be tried in the district where the crime was committed?

MR. THORESEN: He would have the right to be -- if that case could have been brought in Chattanooga on the substantive Count in Chattanooga just as if the conspiracy Count could have been brought in Chattanooga. If there was a venue basis for bringing the conspiracy Count -- and all of the evidence against Mr. Smith in the conspiracy Count in Chattanooga related to the Clarksville case -- if the Government had the basis of bringing the conspiracy case in Chattanooga on a venue basis, it had the authority and the jurisdictional basis to bring the substantive Count. And I don't see how that can be disputed. If there were any acts that established venue in Chattanooga for that purpose --

THE COURT: For the conspiracy.

MR. THORESEN: For the conspiracy, for the exclusive purpose, they would have also established jurisdiction for the substantive offense for which he was tried and convicted in this district. I do have these Exhibits to file, Your Honor.

THE COURT: All right. Yes, Mr. Deneke?

MR. DENEKE: May I respond to that, Your Honor?

THE COURT: Yes, sir.

MR. DENEKE: First of all, Your Honor, the Government asserts that any objection that Defendant Smith has to the trial in two districts was waived when he failed to move for joinder of the two cases in his Chattanooga case. The defense has the right to move for joinder, just as the Government does. Both cases were pending at the time and he did not move, at the time of his Chattanooga trial, to join the substantive offense with the conspiracy Count, which was tried in Chattanooga. We believe that the joinder issue is just simply mooted out by that fact, Your Honor.

Furthermore, as Your Honor is well aware, the venue for the crime which occurred in this district clearly lies in this district. The Government has pointed out in its response to Mr. Thoresen's motion three -- at least three cases from the Sixth Circuit regarding the inappropriateness of a downward departure to equalize a defendant sentence simply -- a downward departure simply for the purpose of equalizing with co-defendants is improper. We don't believe that any downward departure is warranted in this case, Your Honor.

THE COURT: All right. You have filed a Motion for Upward Departure?

MR. COHEN: I will address that, Your Honor. If

I may, Your Honor, concerning two factors, if I may. I have two Exhibits I would like to file with the Court. The first is a copy of the conviction of the Defendant Carlton Victor Smith. It was challenged by Mr. Thoresen in -- as part of his objections to the Pre-sentence Report. That is the one that we responded that the conviction bears the same date and the same Social Security number as Mr. Smith. And I would like to file that just to make the Record.

THE COURT: Conviction where of what?

MR. COHEN: It was a conviction, Your Honor, in the Criminal Court of Hamilton County, Tennessee, on July 8, 1997, for possession of marijuana. Mr. Thoresen had challenged that as saying it was not his client. We responded by saying it was, because it bears not only the name of Carlton Victor Smith, but it bears the date -- his same date of birth and same Social Security number. So in case Mr. Thoresen raises that. I believe it's Number 50, Your Honor. It was 52 in the old report; it's now Number 50 in the revised report. And just to make the Record complete, I would like to file that.

THE COURT: All right. Let it be received.

(WHEREUPON, Government's Exhibit Number 1 was admitted into evidence, after which the following proceedings were had:)

MR. COHEN: And I gave Mr. Thoresen a copy. The

other thing I have, Your Honor, is I know Your Honor has ruled on the --

THE COURT: Was that conviction considered in the computation of the criminal history?

MR. COHEN: Yes, sir, it was. He got one point for it, and that raised his Guideline -- his offense level to a Level Two.

THE COURT: All right.

MR. COHEN: I know Your Honor has ruled on the obstruction of justice, Your Honor, and I am not going to reargue that. We made a proffer of information at that time, Your Honor. We were prepared to put on proof. For the purposes of the Record, I would like to file a copy of the 302 Special Agent Murray prepared, just for the purposes of the Record. I have furnished defense counsel a copy, and I have marked that as Exhibit Number 2.

THE COURT: Let it be received.

(WHEREUPON, Government's Exhibit Number 2 was admitted into evidence, after which the following proceedings were had:)

MR. COHEN: May I have one second, please?

THE COURT: Yes, sir.

MR. COHEN: Very briefly, Your Honor, as far as the upward departure, we have asserted two grounds for upward departure. The first ground for upward departure is

the fact that -- they both relate to the fact that we are under the 1995 Guideline. Under the '95 Guidelines, as the report was revised, there is no separate enhancement for abduction and physical restraint. I am not going to go over the proof with Your Honor, but Your Honor recalls there were two abductions of Donald and Carolyn Pierce, and five people were restrained. The Guidelines also provide that under Application Note 3(A)1.3 provides that if the restraint was sufficiently egregious, an upward departure under 5(K)2.4 may be warranted. We have asserted, and we assert here, that this was particularly egregious restraints. Five people were restrained; that includes two elderly people, one of whom was handicapped. There were two abductions. Just the natures of the restraints. I am not going to go over the facts, but Your Honor gets our point.

The other thing I would point out to the Court is that, as the Pre-sentence Report was revised, the two points for carjacking were taken out, because in the '95 Guidelines it was either financial institution or carjacking. Under '97 Guidelines, which clearly do not apply to these Defendants, the carjacking becomes a separate offense characteristic. It's our position that there were two carjackings in this case, the carjacking of Donald Pierce and the carjacking of Carolyn Pierce. Donald Pierce when he was placed in the Jeep and driven away by Smith and

Nichols, and Carolyn when Doug Daigle got into the car with her and said drive and had her drive him to McDonald's. It's our position that the Court should depart upward to recognize the seriousness of the offense that occurred, and the fact that there were two carjackings in this case.

THE COURT: The Motion for Downward Departure and the Motion for Upward Departure will both be denied. The Court concludes that the Guideline range in this case of 324 to 405 months adequately encompasses the egregiousness, as well as the mitigating factors or aggravating factors, and the Court will sentence within the range.

Now then, the Court has considered the statements filed by the victims in this case, but if Mr. and Mrs. Pierce or Mr. Beaudoin or Mrs. Beaudoin, if you would like to be heard further, you may.

MR. COHEN: Your Honor, Mr. Pierce would like to be heard; Mrs. Pierce does not choose to be heard.

THE COURT: Come around, Mr. Pierce.

(WHEREUPON, proceedings were had in the above-captioned cause on the above-captioned date and have been previously transcribed in a separate volume herein, after which the following proceedings were had:)

THE COURT: Do Mrs. Beaudoin or anyone else wish to be heard?

MR. COHEN: No, Your Honor, they do not.

THE COURT: All right. Mr. Smith, is there anything you would like say in your own behalf? Would you like to be heard?

DEFENDANT SMITH: Yes, sir, Your Honor, I would.

THE COURT: You may stand right where you are there.

DEFENDANT SMITH: Like the victims in this, I have been through two trials, too. I have two children. I brought both of them here today, not -- I didn't even know they was coming. There is a lot of things that's been said in this trial, there is a lot of things that's been said about me. And I am a father and I love my children, but these things, like the Pierces want, they want it all straightened out. I also want it all straightened out, because I do not want my boys to grow up thinking that their father killed someone for money, because that to me is disgusting. And if nobody else -- and if I don't do anything else, I want that emphasized right there to the point. I will do what is necessary to prove that I did not kill anyone for money.

THE COURT: You're talking about Mr. Roberts?

DEFENDANT SMITH: Yes.

THE COURT: All right. I don't think anybody is accusing you of that, Mr. Smith.

DEFENDANT SMITH: You know, the victims talk

about pain and suffering, and everybody goes through it. And I am not trying to take it away from them because I have a lot of pain myself. Because like I said, I have been taken away from my family, you know, day in and day out. Somewhere in the middle of this whole thing stuff got turned around and twisted. And I don't think it can ever be straightened out right, because there has been so much wrong to try to get to the right point. So in closing, like I said, I am very disturbed by the one particular piece of paper that sets right here in front of me. And I never want my children to think that I killed anyone for financial gain. Thank you very much for your time.

THE COURT: Yes, sir. All right, Mr. Cohen, does the Government wish to be heard further?

MR. COHEN: I do, Your Honor.

THE COURT: All right.

MR. COHEN: If it please the Court, Mr. Smith has made a statement to the Court, but he never said he was sorry. He never expressed any remorse for the heinous acts he committed. Your Honor has heard all of the proof in this case and Your Honor has heard from Mr. Pierce. The Government recommends that the Court sentence Mr. Smith to 405 months, the maximum. What he did was despicable, he tortured five people, and it has had a lasting impact on their lives and the lives of their loved ones. 405 months,

Your Honor, frankly is not time enough to keep this man in jail, but it's the most that can be done under the Court's rulings. And we strongly urge the Court to impose 405 months incarceration.

THE COURT: Mr. Thoresen?

MR. THORESEN: Your Honor, Mr. Smith has been convicted of committing one offense, and I don't want to diminish -- these people are good people, and certainly they had no right to have this happen in their lives. And Mr. Smith has not admitted his involvement in this case. That doesn't mean -- and does not admit his involvement in this case, and everybody knows in this case that this is the subject of an appeal. Speaking on his behalf in that area, these are good people, and obviously no one deserves that to happen. And to admit that -- Mr. Smith is not going to stand up here and admit that he did something that he alleges he didn't do, and a person can be generally compassionate and sorry for what happened to them, and on his behalf I want to state that.

However, justice is more than that, Your Honor. Justice is forgiveness, justice is more than just imposing the greatest sentence that could be imposed. It's much more than that. It's looking at the totality of the circumstances. And under the law it's -- as required under the law, it's to look at the totality, to look at what has

occurred, to look at his background, to look at what happened to them, and also under the statute the Court is to look at the issue of disparity. And that is a required aspect of sentencing, just like under the Guideline. And whatever the Court does, it is important, I think, that there be parity between what happened in Chattanooga and what this Court gives. And the Court has the authority to do that, and justice requires it. And so whatever this Court does, it should be comparable. It should be compared to what these other Defendants received in Chattanooga. And to give him the maximum for these Guidelines, as Mr. Cohen urges, is not parity. It's disproportionate, it's disproportionate in sentencing, and it's punishing him far more than what people in Chattanooga were sentenced for in comparable circumstances.

THE COURT: All right. As to Mr. Smith, is there any reason why sentence should not be imposed at this time?

MR. COHEN: No, Your Honor.

MR. THORESEN: No, Your Honor. I do want to introduce these Exhibits that I talked about.

THE COURT: They will be received. Let them be received at this time. Go ahead and bring them up, if you have them. Is it one collective?

MR. THORESEN: One collective. This is a Transcript; it's marked as Defendant's Exhibit 1, the

Chattanooga Transcript.

THE COURT: Let it be received.

(WHEREUPON, Defendant Smith's Exhibit Number 1 was admitted into evidence, after which the following proceedings were had:)

MR. THORESEN: This is 2, Your Honor. It's the affidavit of Michelle Hendrix of our office.

MR. COHEN: Your Honor, may I see Number 2, please?

THE COURT: Yes, sir.

MR. THORESEN: Here, this is your copy.

(WHEREUPON, Defendant Smith's Exhibit Number 2 was admitted into evidence, after which the following proceedings were had:)

MR. THORESEN: Number 3 is the Transcript, sentencing Transcript in Chattanooga.

(WHEREUPON, Defendant Smith's Exhibit Number 3 was admitted into evidence, after which the following proceedings were had:)

MR. THORESEN: Number 4 is the affidavit that I filed regarding the enforcement of the subpoena.

(WHEREUPON, Defendant Smith's Exhibit Number 4 was admitted into evidence, after which the following proceedings were had:)

MR. COHEN: May I speak to Mr. Thoresen for a

second?

THE COURT: Yes, sir.

(WHEREUPON, an off-the-Record was had between counsel, after which the following proceedings were had:)

MR. THORESEN: Number 5 is the Chattanooga judgment.

(WHEREUPON, Defendant Smith's Exhibit Number 5 was admitted into evidence, after which the following proceedings were had:)

MR. THORESEN: I would like -- for the Record, Your Honor, 6 would be the judgment and committal of Thomas Albert Nichols.

(WHEREUPON, Defendant Smith's Exhibit Number 6 was admitted into evidence, after which the following proceedings were had:)

MR. THORESEN: And I have one affidavit that I filed this morning, Your Honor, which is not really related to the sentencing. I guess it is in some ways. I would like permission to file that as a late-filed Exhibit. It is already filed in the Clerk's Office. It relates to a matter that Mr. Cohen raised in response to my motion to enforce the subpoena, and I felt it necessary to file an affidavit, so I would like to do that.

Also I have a statement from Mr. Smith that I want to be made part of the Record. If I could file that

as well.

THE COURT: Are you talking about the affidavit about Judge Collier giving you permission to look at the --

MR. THORESEN: Yes. I filed another affidavit. I filed an affidavit in response to that, Your Honor. And that has already been filed, but I want to make sure it's already part of the Record. But I think I would like to make that 7.

THE COURT: It will be received.

(WHEREUPON, Defendant Smith's Exhibit Number 7 was admitted into evidence, after which the following proceedings were had:)

MR. THORESEN: And 8 is the statement of Carlton Smith.

MR. COHEN: Your Honor, I have not seen 8.

THE COURT: Show it to him.

MR. THORESEN: This is related to putting in the Record about the obstruction issue that Mr. Cohen has put in, and I want to put this in as well.

THE COURT: All right.

(WHEREUPON, Defendant Smith's Exhibit Number 8 was admitted into evidence, after which the following proceedings were had:)

THE COURT: I just realized that the Court has not ruled on your Motion for Reconsideration of the Court's

denial of the Motion to Dismiss on the grounds of double jeopardy. That motion is denied.

MR. THORESEN: Your Honor, there is another issue I would like to address, and that is -- it doesn't really relate -- it relates to the assertion made by Mr. Deneke regarding a motion for a joinder. And I would like to file a supplemental affidavit with respect to that. What Mr. Smith advises me is that his attorney in Chattanooga had communications regarding that issue. I haven't talked to him about that issue, and I would like permission to file an affidavit with respect to that as a late-filed Exhibit, which would be Number 9. Apparently the substance of that was that efforts to resolve this through some type of Rule 20 issue were resisted by the Government per Mr. Smith. I don't have any -- to the extent that that --

THE COURT: Rule 20 would require it be transferred on a guilty plea.

MR. THORESEN: I understand that. And he may not understand that, and I am sure he doesn't. But I would like the opportunity to talk to his lawyer about that issue to the extent that it may be relevant, and that would be Exhibit 9.

THE COURT: All right. You may do so.

(WHEREUPON, Defendant Smith's Exhibit Number 9 was

admitted into evidence, after which the following proceedings were had:)

THE COURT: Is there any further reason why sentence should not be imposed at this time as to Mr. Smith?

MR. COHEN: No, sir.

THE COURT: Mr. Thoresen?

MR. THORESEN: No, Your Honor.

THE COURT: All right, stand where you are, Mr. Smith.

Based upon the verdict of the Jury in the case of United States vs. Carlton Victor Smith, finding you guilty of Count 1 and Count 2 of the Indictment filed against you, the Court now finds you guilty and concurs in the finding of the Jury. As previously noted, in a tentative way, the Court now determines finally that the offense level under the Guidelines is 40, the Criminal History Category is II, the Court adopts the factual findings and Guideline applications in the Pre-sentence Report with the exception of the enhancement of two points for obstruction of justice, which the Court does not find occurred in that case. I was here, and I did not observe that. And the Court will not enhance this sentence for that reason.

The imprisonment range is 324 months to 405 months. The Court sentences you, Mr. Smith, to the

custody of the Attorney General of the United States or his authorized representative on Count 1 of the Indictment to the maximum provided by law for that offense, which is 25 years. The Court sentences you to 300 months on Count 1.

As to Count 2, which contains a minimum sentence of ten years to life, the Court sentences you to 405 months, to run concurrently with the sentence imposed in Count 1, and concurrently with the sentence imposed in Case Number 1-38 of the Eastern District of Tennessee imposed on March 9, 2001.

Following your incarceration, you will serve a period of supervised release for five years.

Fine is waived. The Court finds you are unable to pay a fine.

The conditions of supervised release will be those standing conditions imposed in the Middle District of Tennessee.

The cost of your incarceration and cost of your supervised release are both waived. The Court finds you are unable to pay those.

Restitution is ordered in the amount of $851,000 to the First American National Bank, now -- what is it now? It's changed names.

MR. DENEKE: AmSouth, Your Honor.

THE COURT: AmSouth. Now, that restitution order, of course, is not in addition to the restitution that was ordered in the Chattanooga case, but the total loss to the bank of $851,000 will be jointly and severally imposed upon the Defendants in this case, as well as those who were convicted in Chattanooga, where that was also taken into consideration.

Now, Mr. Smith, it's the duty of the Court to advise you of your right to appeal the case. You have a right to appeal both your sentencing and your conviction. In order to do so, you must file a Notice of Appeal within ten days from today, not counting today. If you wish it to be done, the Clerk will file a Notice of Appeal on your behalf. If you are unable to pay a lawyer to prosecute the appeal, the Court will appoint a lawyer for you. Now, do you understand those rights?

DEFENDANT SMITH: Yes, sir. I wish for it to be appealed.

THE COURT: Let a Notice of Appeal be filed on his behalf as of today.

MR. COHEN: Two matters, if I may, Your Honor.

THE COURT: Yes, sir.

MR. COHEN: Special Assessment of a hundred dollars per --

THE COURT: Special Assessment of $200, $100 on

each Count, is imposed and is payable immediately.

MR. COHEN: The other thing, Your Honor, is Your Honor imposed conditions of supervised release and said the regular conditions imposed. There were some additional suggested special conditions.

THE COURT: They are not necessary. He will be 75 years old when he gets out, Mr. Cohen. And those special conditions are unnecessary.

Mr. Thoresen, the Clerk tells me that some of the Exhibits you brought up here you also took back.

MR. THORESEN: I will straighten it out with her after the proceeding.

THE COURT: Let's keep the Record straight.

MR. THORESEN: I will do that.

THE COURT: Let's proceed to the sentencing in case of United States v. Thomas Albert Nichols. Is the Government ready?

MR. DENEKE: Government is ready, Your Honor.

THE COURT: Defendant present and ready?

MR. LOVE: Defendant is ready. May we approach, Your Honor?

THE COURT: Yes, sir.

(WHEREUPON, the following proceedings were had at the Bench:)

MR. LOVE: I would ask the Court if they could

move Mr. Smith while we go into this.

THE COURT: He doesn't have to remain here any further. I can put him in the custody of the Attorney General or the Marshal.

MR. COHEN: If Your Honor is going to do that, I would ask for a brief recess to let the Marshals transport -- just give them a second to get the Defendants out.

(WHEREUPON, the following proceedings were had in open court:)

THE COURT: Okay. Now, then, Mr. Marshal, you may remove Mr. Smith. Let's take a brief recess.

(WHEREUPON, a recess was taken, after which the following proceedings were had:)

THE COURT: All right. We are ready for the sentencing in the United States vs. Thomas Albert Nichols. And I will hear you, Mr. Love, on your objections to the factual findings and Guideline applications in the Pre-Sentence Report.

MR. LOVE: Thank you, Your Honor. Your Honor, probably the most pertinent one, given what your previous rulings are that are applicable to me -- at least I anticipate that -- I had made a challenge to the criminal history points in two regards. The first challenge I made to the criminal history points was whether a 15-year window

had actually passed between the time of conviction and the time of this criminal event. The Government has provided --

THE COURT: You are aware, Mr. Love, that if any part of the service of the sentence is within the 15-year period, then that removes the exemption and it's no longer -- it can be considered.

MR. LOVE: Yes, sir. Yesterday I had a CLE from, I believe Mr. Mosier, and it was very helpful. It was one-on-one and it really benefited me a great bit as I was going through this and trying to decipher this.

THE COURT: Yes, sir. We are using the 1995 Guidelines manual in this case, as well as the previous one.

MR. LOVE: Yes, sir. The challenges he explained to me, though, was also -- I believe I got the date out of there is September, actually out of some of the documents I received. I was provided a document this morning that established he was actually convicted in January and would be within the 15-year window, irregardless of what service he actually did with imprisonment, if any. So by and large, that issue is moot.

THE COURT: All right, sir.

MR. LOVE: Your Honor, much of what we had to and complained about had been changed in the brief. I understand because of the ex post facto issue -- that we are going to the 1995 book. As far as the other factual Counts,

I don't know what the Court anticipates using as far as the Daigle assertion that my client was involved in some sort of murder.

THE COURT: I am not going to consider that.

MR. LOVE: Yes, sir.

THE COURT: Of course, I am aware of it. Mr. Roberts was apparently done away with, but as to who did it that is subject of a later prosecution if anybody wants to pursue it. I don't think the proof is evident enough to be considered in this case, and it's not evident to me as to who did it. That is another trial.

MR. LOVE: Yes, sir. Your Honor, in my brief I also addressed whether a victim is vulnerable or not, and I understood the Court's ruling where you determined that the seven-year old child -- I believe Mark -- and his grandfather were both vulnerable victims. Your Honor, I ask the Court to consider that Mr. Beaudoin, particularly, showed a remarkable amount of poise given the situation. And even though he does have -- he is somewhat elderly and he has this handicap that he lives with, frankly, Your Honor, I don't think it hindered him any more than any other victim. He seemed to be able to collect his wits very quickly and he actually, I believe, is probably the main linchpin of the Government's case for the accumulation of the DNA evidence. And for those reasons, Your Honor, I am

not quite sure how he is a vulnerable victim.

Moreover, the child, just by virtue of his age alone -- Your Honor, as I understand the Sentencing Guidelines, it's not enough to really establish that he is a vulnerable victim. There has to be some particular condition of that that renders him vulnerable. I don't think, and my assertion is, Judge, that no one, no matter what their age was, could have handled that situation any differently, that there was nothing acutely different about these two -- this young man and his grandfather than any other victim given the circumstances of someone having a gun and coming into your home. For those reasons -- and that may be a twist in the view of this -- Your Honor, I am asking the Court not to rule as a vulnerable victim in this particular regard.

But also there is a question of foreseeability that goes to Mr. Nichols. According to the Government's theory and what they proved at trial, Mr. Nichols was outside the residence. And the question then becomes how of this is actually foreseeable to Mr. Nichols.

THE COURT: Well, in that respect, Mr. Love, they had been casing the house for some days prior to the actual home invasion. They had been observing who was there, they had reason to know that the only people in the house would be the grandparents babysitting the seven-year old when he

came home from school. And I am sure I appreciate as well as Mr. and Mrs. Beaudoin do, the fact that elderly people can still have some sense about them and do. But I don't think there is any question in this case that your man knew and foreseeably knew that the only people in the house were going to be the grandparents and the grandchild, and the use of those particularly vulnerable people was an egregious factor. And so your objection is overruled.

MR. LOVE: Your Honor, I would ask the Court to allow me to rest on my brief for the remainder of this.

THE COURT: I need to make rulings with respect thereto.

MR. LOVE: Thank you, Your Honor.

THE COURT: Your objection to Paragraph 9, the relevance of Smith's conduct during the extortion, is part of the background of the offense and it doesn't affect the calculation of the Guidelines at all.

Your objection to Paragraph 14 has to do with a matter of proof on whether or not she recognized the car as just a sporty -- a black sporty car or a black Mustang. That was a matter that was resolved by the Jury's verdict.

Your objection to Paragraph 18, the traffic stop, that, again, is part of the proof in the case resolved by the Jury's verdict and has nothing to do with the

sentencing.

Your objection to Paragraph 23 is mooted by the Court's ruling.

The objection to Paragraph 24 and 25 is mooted by the Court's statement that it would not consider the alleged death of Mr. Roberts, the alleged murder of Mr. Roberts.

Your objection to Paragraphs 29 and 30 is overruled. That is part of the overall information with respect to the intimidation that was performed on the victims in this case.

As to Mr. Nichols' direct knowledge of the assault by Mr. Daigle on Ms. Pierce, as the Court recalls there was no direct information as to that, but it had occurred in a prior home invasion and a prior bank intimidation under similar circumstances, and so there is some reason to believe that Mr. Nichols and Mr. Smith knew the tactics of Mr. Daigle in the intimidation of female bank managers. So your objection is overruled.

Your objections to the enhancements from the Eastern District of Tennessee being used again here are dealt with in the discussion of Mr. Smith's similar objection, but the sentences will be concurrently run and the enhancements that are applicable to the Clarksville occurrence are calculated, as this Court interprets the

Sentencing Guidelines, regardless of what was done in the Eastern District of Tennessee.

THE COURT: The same ruling with respect to your objection to Paragraph 40. That is an appropriate enhancement for the offense here. It's also an element of the charge.

The Court has already ruled on the use of the minor, but your objection to Paragraph 45, with respect to the enhancement for use of a minor in the commission of a crime is overruled. The proof that the child was used to talk to his mother and further lure her to come home without indicating any problems, and intimidation of the child were an egregious crime in and of themselves. The enhancement is appropriate.

We have dealt with the -- do you have specific objections -- further specific objections to the criminal history calculations?

MR. LOVE: No, Your Honor. Actually I would strike that portion.

THE COURT: All right. Well, grouping is specifically excluded with respect to 2(B)3.2 offenses, Mr. Love, and it would not be grouped.

Your objection to the criminal history points has been resolved.

Your objection with respect to the

restitution of $851,000 -- there was some testimony with respect to the Government not trying to make any recoupment of the money that Ms. Daigle spent to buy her house and buy some other things and pay for a trip. But the loss to the bank, nevertheless, is the same. The amount of money stolen was $851,000, and the computation of restitution will be based upon that.

Did that deal with all of your objections, Mr. Love? Any further objections to the factual findings or Guideline applications in the Pre-sentence Report?

MR. LOVE: No, sir.

THE COURT: All right. Then based upon that, the Court will adopt -- yes, sir?

MR. DENEKE: May I just have one quick issue?

THE COURT: Yes, sir.

MR. DENEKE: Mr. Love had contended in his objections that his client was entitled to acceptance of responsibility in this case, and I wanted to make sure we have a finding on that objection.

THE COURT: The Court finds that he has not accepted his responsibility. There has been absolutely no indication of any remorse or any -- as far as I know, he still contends that he didn't do it. And, of course, the Jury found contrarily, and that is -- the Court approves that verdict.

MR. DENEKE: Your Honor?

THE COURT: Yes, sir.

MR. DENEKE: A couple more.

THE COURT: Yes, sir.

MR. DENEKE: He further objected -- maintained in his objections that his client was entitled to a reduction under 5(k)1.1 for substantial assistance. We want to make it clear that the Government has not made that motion and will not do so based on any information he provided us at this point.

THE COURT: I assume he was making that motion under 5(k)1.2, that he -- the one that does not require your concurrence.

MR. DENEKE: We want to make it very clear, Your Honor, we do not believe any information he has provided rises to a level of substantial assistance to the Government at this time.

THE COURT: All right. Anything else?

MR. DENEKE: He objected to the enhancement for the assets of a financial institution being taken. We believe the proof is clear that the assets of the First American Bank were taken and that that enhancement is appropriate.

THE COURT: Yes, sir.

MR. DENEKE: And finally, he also objected that

it constituted double-counting to assess points for both a vulnerable victim and the use of a child in the offense. And, Judge, we believe that the vulnerability of the victims rose from the elderly status of Mr. and Mrs. Beaudoin, who they saw before they went into the house and the use of the child and the scoping out they had done, whereas the use of the child is a separate harm in that they used Mark Pierce to get on the phone to lure his mother into the house.

THE COURT: Yes, sir. I think the Court has addressed all of those things. I am going to take up the matter of his Motion for Downward Departure after I make a finding with respect to the Guideline applications. So based upon those rulings, the Court will adopt the factual findings and Guideline applications in the Pre-sentence Report and determines that as to Count 1, the maximum provided by law for that offense is 25 years.

With respect to the offense level of both Count 1 and Count 2, the offense level is 40, the Criminal History Category is III, the imprisonment range is 360 months to life imprisonment. Supervised release range is three to five years. The fine range is $25,000 to $250,000. Restitution in the amount of $851,000, jointly and severally, is required. And a Special Assessment of $200 is necessary. Now then, I will hear you.

MR. DENEKE: Your Honor?

THE COURT: Yes, sir.

MR. DENEKE: I believe the Pre-sentence Report concluded that his Criminal History Category was IV.

THE COURT: All right. Wait a minute. You are correct. I was at one time in the consideration of this concerned about whether or not he should be charged three additional points for the offense in Chattanooga. You will note that I did not charge Mr. Smith with the offense in Chattanooga as far as his Criminal History Category was concerned. That is because if you tried him in the same venue for a conspiracy offense and substantive offense and he was late coming into the conspiracy, they would have been grouped. And so I didn't think that that should be considered a separate crime. Here, however, Mr. Nichols has been convicted of a conspiracy to do both the Chattanooga and the Clarksville home invasions. And there is more justification for considering that as a separate offense for the computation of the criminal history. It doesn't make any difference, because a 40 -- Criminal History Category II and a 40, Criminal History Category III carry the same penalty, 360 to life.

MR. COHEN: I believe it's 43 and IV, Your Honor. Still 360 to life.

THE COURT: I'm sorry. In both instances it's 360 to life. It's the same punishment. But upon

reconsideration -- and I had not changed my notes since I did reconsider -- I think that the Chattanooga offense should be considered in Mr. Nichols' case as part of his criminal history. And so the Court will revise its findings. Instead of a 40 total offense level and Criminal History Category of III, it will be a total offense level of 40 and a Criminal History Category of IV. But in both instances the range is 360 to life.

All right, now with that, Mr. Love, I will hear you as to where that you feel the sentence should fall within the range.

MR. LOVE: Your Honor, may I take it you want to hear my Motion for Downward Departure?

THE COURT: And I want to hear your Motion for Downward Departure, yes, sir.

MR. LOVE: Your Honor, as far as where the sentence should fall in the range, we would ask the Court to note that through the testimony of this case that Defendant Nichols did not have the commanding role that I believe that the Court understood that Smith had. He was not -- and as a result, he shouldn't be held to the same level of accountability, Your Honor, in some regard. Recognizing that he had been convicted of the offense, the Court finds an egregious offense, particularly given some of the facts the Court concluded here today. Mr. Nichols was an outside

man. Smith -- and I think the Court can see through the proof -- was more or less calling the shots. He maintained the money, he controlled the money afterwards. We heard from the testimony of his cousin in that regard. And for those particular reasons we would ask the Court not to sentence this man as harshly.

We would also ask the Court to note that he is already serving a 25-year sentence from the Chattanooga court. And while the Court has made a determination that those two events are not groupable and they should be considered distinct, they were in the -- according to the conviction in Chattanooga, one continuing course of conduct. If the Court looks at the Chattanooga conviction as far as where the sentence fell, he received a 235-month sentence on Count 12 and Count 13 for money laundering, and consecutive to that he received a 60-month sentence among other -- a 120-month and another 60-month sentence. He received a 60-month sentence for using -- the 924(c), I believe, conviction.

The upshot is, Judge, that he has -- the 235 months really came from -- and the brunt of what he is facing as time came from actions that both contemplate what he derived from Chattanooga and what he derived from Clarksville. And as a result, he has received a 295-month sentence.

Now, to a 30-year old man I don't believe that has the same consequence as it does to a man that is Mr. Nichols' age. He was born in 1954, he is now 48 years old. And his sentence is much more onerous than he previously received. If the Court -- also the Criminal History points I would argue to the Court that while you have already made your determination there, I would ask the Court to sentence to the lower end of the range because his Criminal History points don't really depict him for some of the points as an egregious felon and a dangerous felon until later on in his criminal career. One of the points that was assessed was for shoplifting. And while the Court properly assessed the point, it isn't the type and mode of conduct that I would argue that a man should serve the remainder of life in prison for. Back to my previous point, frankly, Your Honor, he is already serving the remainder of life in prison. He has 22 or 23 years left to serve and he is 48 years old. The strong odds are this man is not getting out of prison.

Now, I am not sure how the Court is going to take up my Motion for a Downward Departure, but if I could --

THE COURT: I will hear you on it right now.

MR. LOVE: Your Honor, I would ask the Court -- I have basically made four points, and I would ask the Court

to consider a combination of those. I believe the Court can, under the Sentencing Guidelines, consider a combination of those events even under the '95 Guidelines. I believe it is a fair argument, Your Honor.

I have already covered his age, Your Honor, but I haven't covered -- and the Court has heard some from Mr. Smith on this -- that he has provided some assistance to the Government, or at least he has attempted to. And the Government will not concede that it's substantial assistance, but, frankly, Your Honor, he has given them more on the disappearance of Ted Roberts than I think they can argue that they have received from anyone else or by any other lead or evidence they have. We attempted to do this, Your Honor, before we went to trial, and we could not come to terms. But afterwards, he wanted to meet with the Government, which he did. He had met with Agent Murray, and he recounted what he saw with Mr. Smith. Now, whether the Court gives downward departure or not -- I am hoping the Court does, but if it doesn't, I would ask the Court to apply that to sentence him to the lower end of the sentencing range. But I am also asking the Court to depart downward for that.

And the reason I ask the Court downward -- and I make a stipulation of this -- I know the Government hasn't had any time to check this. But he has received

threats from Mr. Smith through Ms. Vickie Penny, who is the mother of his child, about any cooperation that he may have given the Government. We are attempting to get a letter that Mr. Smith sent in that regard, and that threat has been communicated not only to Ms. Penny but to Crystal Smith, who is in the process of divorcing Mr. Smith.

He also faces -- like in the Koon case, he faces a substantial threat for his cooperation, yet if he can tell the Court he intends to follow through on what he told the Government and will provide testimony. I believe, and I anticipate he is going to tell the Court, that he will provide testimony no matter what you do, whether the Court decides that you are going to sentence to the lower end of the range or whether you downward depart and give him credit for this under 5(k)(2).

He should receive some credit for that because it shows a level of moral conscience that I think is noteworthy. And as a result he also faces, just like in the Koon case, and this is what the Koon case is about, acute susceptibility of abuse in prison. Of course, in the Koon case he had two police officers that were convicted of the beating of a man on the streets. And because they were police officers, the Court downward departed because by virtue of their status they may have a particularly hard time in prison. I think from the Court's experience, they

would know that people who testify against others could face the same type of abuse in prison. And here we would proffer to the Court that he has already received some threats, for what we anticipate is his expected continued cooperation.

Your Honor, I have heard the Court on the -- what you consider the disparity in treatment, and I understand that there won't be a downward departure for that, for that particular reason alone. But I ask the Court to add that into the mix and give that weight as well.

While he has not admitted in any fashion that he is responsible for this particular crime he is facing charges for, he has endeavored to cooperate in other respects. And in the process of that cooperation, he also was -- candidly admitted that he had grown marijuana and was active in the cultivation. And he opens himself up to additional charges. And I believe he should receive credit for that as well, Judge. I make that as a proffer. He told Agent Murray that at the conclusion of the last -- at the trial and for that particular reason, and I believe the case is Milner -- U.S. vs. Milner, it's a Sixth Circuit case that I cited in the brief -- I believe the Sixth Circuit has allowed that for credit on previous occasions.

For all of those reasons, Judge, I would ask the Court to sentence him at least to the lower end of the range, but I also ask the Court to allow for downward

departure to acknowledge his desire to help the Government and do the right thing here. Thank you, Your Honor.

THE COURT: Mr. Nichols, would you like to be heard in your own behalf? Anything you would like to say?

DEFENDANT NICHOLS: Yes.

THE COURT: All right, sir.

DEFENDANT NICHOLS: Well, I don't know much how to say it. I feel for the people in this crime. I am sure they went through a lot of stuff, a lot of horrible things. There were more people to these crimes than meet the eye. I have agreed to help Agent Murray with some other things that is not here presented in this court. I guess they have been talked about, but they haven't been presented. And I just really don't know what to say. Mr. Daigle had many victims, though.

THE COURT: All right. Mr. Pierce, do you wish to be heard again?

(WHEREUPON, proceedings were had in the above-captioned cause on the above-captioned date and have been previously transcribed in a separate volume herein, after which the following proceedings were had:)

THE COURT: Thank you, Mr. Pierce. In that regard, the Court is not making any differentiation in the roles of the various participants in this case. They had different roles. Mr. Daigle was the lead dog in the pack;

he has gone to his reward. But Mr. Smith and Mr. Nichols played different roles, but they both were part of the conspiracy and they participated in its fruits, so the Court will not differentiate on the roles in the offense.

Now, Mr. Cohen, does the Government wish to be heard further? Mr. Deneke? All right.

MR. DENEKE: Your Honor, first of all, with regard to the Motion for Downward Departure, you have heard quite a bit about this information he presented to the Government regarding the murder of Ted Roberts. And I think we should make it clear for the Record when, prior to his death, Mr. Daigle made a tape recording in which he laid out his version of the story of how Ted Roberts was murdered. That tape was played at the detention hearing when Mr. Nichols and Mr. Smith were present in the Eastern District of Tennessee. And they heard that tape played. After he was convicted by the Jury in this case, Mr. Nichols made a proffer to Agent Murray of his version of the murder of Ted Roberts. The two stories are substantially the same. In Mr. Daigle's version of the story it was Mr. Nichols who didn't do the killing, but helped get rid of the body. In Mr. Nichols' version of the story, he saw basically the same facts, but it was Glen Harvey who helped to get rid of the body. The Government has two similar but different stories of what happened, and basically no further proof beyond that

at this point, Your Honor. I don't believe that information he has provided rises to the level of substantial assistance. I don't believe it forms the basis of a downward departure, given the circumstances of this case. The Defendant has made his cooperation with the Government a matter of public Record by raising it in this court and by raising it in his pleadings. I don't believe it forms a basis for a downward departure for him, that having made that public he may now need additional protection from the Bureau of Prisons while he is incarcerated. That is a matter the Bureau of Prisons deals with on a routine basis, and can take care of, Your Honor, and doesn't warrant a downward departure.

He has also alleged as a basis for a downward departure that he is already serving 235 months with regard to the conviction in Chattanooga. And, Your Honor, when you start looking at concurrent sentences, it's kind of a chicken and an egg question sometimes, which one came first, which one came second. But, Your Honor, he was sentenced to 235 months for his role as the Number Two man inside the house in the Chattanooga robbery, not part of the conspiracy, his role in the Chattanooga robbery as a Number Two man inside the house, with 60 months consecutive to that on a 924(c) charge. He was then sentenced to additional terms of incarceration for the conspiracy, the money

laundering, all of which ran concurrent to that 295 months. So which is first and which is running concurrent to another, the fact remains the man is serving 295 months for conduct which included separate and distinct conduct as the inside man and the Number Two man inside the house in Teresa Bailey's home in Chattanooga. And we don't believe that either forms the basis for a downward departure, nor does his age, Your Honor, although there is some case law that says if you are elderly or infirm that may form the basis for a downward departure, and I am not willing to admit that someone who is 47, 48 years old is elderly, at this point in my life. That doesn't form the basis for a downward departure.

THE COURT: I tend to agree with you.

MR. DENEKE: I thought I was safe on that argument, Your Honor.

THE COURT: Yes, sir.

MR. DENEKE: And we have already addressed the issue regarding disparity between his sentence and others. For those reasons, Your Honor, we don't believe he is entitled to any downward departure.

With regard to where in the sentencing range he should be placed, again, Your Honor, I point out that I think the fact that differentiates this Defendant from the other was his role in the Chattanooga home invasion robbery.

Mr. Smith didn't participate in that robbery. I think he was clearly a wanna-be, wanted to get in on this and did. But when we start looking at the issue of foreseeability of the consequences of this crime, this man had been the inside man in Chattanooga. He had seen first-hand the terror that was imposed upon the families whose house was invaded and whose lives were taken over. Even though he didn't go in the house here, he had first-hand knowledge of what was going to happen when this crime took place. That first-hand knowledge, Your Honor, I believe makes him even more culpable than Mr. Smith in knowing what was going on and in carrying out this robbery.

I don't believe that he is entitled to any low end of the range based on his role in the offense or in any other reason. Your Honor, this man knew exactly what was going to happen inside that house. He knew what Daigle was going to do, he knew what was going to happen to those people. And as Mr. Pierce has said, he was standing by to come in and help back that up if need be. So we don't believe he is entitled to a sentence at the low end of the Guideline range, Your Honor. And just for the Record, Your Honor, we have made an upward departure motion. We maintain that motion, but we don't need to argue it any further.

THE COURT: Both the upward departure motion and the downward departure motion will be denied. The Court

finds that the range of punishment provided by the Guidelines is adequate to address the Defendant in this situation.

Now then, do you wish to be heard any further, Mr. Love?

MR. LOVE: No, Your Honor, except for the fact that I would ask the Court to make a recommendation to the Bureau of Prisons that the Defendant be housed in Edgefield in South Carolina. He was previously there. His mother resides in Maryville, and given her age -- she is in the back of the courtroom -- that would allow her at least some access to him, Your Honor. Thank you, Your Honor.

THE COURT: All right. Is there any reason why sentence should not be imposed at this time?

MR. DENEKE: No, Your Honor.

MR. LOVE: Not from the defense, Your Honor.

THE COURT: All right. Stand where you are, Mr. Nichols. The Court will adopt the factual findings and Guideline applications in the Pre-sentence Report. Based upon the Jury's verdict of guilt as to Counts 1 and 2 of the Indictment filed against you, Mr. Nichols, the Court finds you guilty, and concurs in the finding of the Jury. Based upon the Guidelines, the most serious offense is Count 2, and it carries 360 to life, based on a total offense level of 40 and a Criminal History Category of IV. The Court

sentences you as to Count 1 to 300 months, the maximum permitted by law as to Count 1, in the custody of the Attorney General of the United States.

As to Count 2, the Court sentences you to 405 months, to run concurrently with the sentence imposed on Count 1, and the sentence imposed by the Court in Chattanooga. It shall run concurrent with both of those, for a total of 405 months.

Restitution, you are jointly and severally liable to the AmSouth Bank in Clarksville in the amount of $851,000.

You will serve a period of five years of supervised release following your incarceration under the standard conditions of the Middle District of Tennessee.

Fine is waived. The Court finds you are unable to pay a fine.

Cost of incarceration and cost of supervision are also waived. The Court finds you are unable to pay those.

A Special Assessment of $200, a hundred dollars on each Count of the Indictment, is imposed and is payable immediately.

The sentence that the Court has imposed is within the Guideline range, and that range exceeds 24 months. The sentence is imposed at the level chosen by

the Court for the following reasons. The circumstances of this crime were very egregious, and there was substantial psychological harm done to the victims, and the Court wishes to impose a serious enough sentence that hopefully a deterrent effect will be realized upon others who may consider this same course of conduct.

The previous criminal history of the Defendant has been taken into consideration in the establishment of the Guidelines, but this Court is punishing for the offense in Clarksville and what this man did in Clarksville.

Now then, it's my duty to inform you, Mr. Nichols, of your right to appeal both your sentence and your conviction. If you wish to appeal, you must file a Notice of Appeal within ten days from today, not counting today. If you wish it to be done, the Clerk will file a Notice of Appeal on your behalf. If you are unable to pay a lawyer to prosecute the appeal, the Court will appoint a lawyer for you. Do you understand these rights?

DEFENDANT NICHOLS: Yes. I wish to appeal.

THE COURT: All right. Enter a Notice of Appeal on his behalf, Ms. Tipton.

DEFENDANT NICHOLS: Thank you.

THE COURT: Now then, is there anything further? Have I omitted anything? Mr. Cohen?

MR. COHEN: No, sir.

THE COURT: Mr. Love?

MR. LOVE: No, Your Honor.

THE COURT: All right. Mr. Marshal, he is in your custody. Court will stand in recess.

(Which were all of the proceedings had in the above-captioned cause on the above-captioned date.)

REPORTER'S CERTIFICATE

I, Charlotte H. Sloan, Official Court Reporter for the United States District Court for the Middle District of Tennessee, with offices at Nashville, do hereby certify:

That I reported on the Stenograph machine the proceedings held in open court on October 11, 2002; in the matter of United States vs. Thomas Albert Nichols, et al.; Case No. 3-00-00095; that said proceedings in connection with the hearing were reduced to typewritten form by me; and that the foregoing transcript is a true and accurate record of said proceedings.

This the 27th day of November, 2002.

Charlotte H. Sloan

CHARLOTTE H. SLOAN
Registered Professional Reporter

***CERTIFIED TRANSCRIPT ONLY IF SIGNED IN BLUE INK***