IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **CASE NO. 3:00-00095** |
| | ) | **SENIOR JUDGE WISEMAN** |
| **CARLTON VICTOR SMITH** | ) | |

## DEFENDANT'S SENTENCING POSITION PAPER

The defendant Carlton Smith files this position paper to present compelling reasons, under the parsimony provision and sentencing factors of 18 U.S.C. § 3553(a), for imposing on him a sentence of 20 years.

### I. A sentence of 20 years satisfies the parsimony provision and sentencing factors of 18 U.S.C. § 3553(a)

#### A. The parsimony provision, not the Guideline range, should give primary guidance to the Court in selecting a sentence

Congress's primary mandate to sentencing courts is contained in the first sentence of Section 3553(a): "The court *shall* impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in [Section 3553(a)(2)]" (emphasis added).[1] The importance of this provision (sometimes referred to as the "parsimony provision") cannot be overstated — as plainly illustrated by Congress's mandatory directive that it be followed. It requires the district court to ascertain the lowest sentence that would be sufficient to achieve the purposes of criminal

[1]Those purposes are "the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

sentencing enumerated in Section 3553(a)(2) with respect to the particular offender before the court. It represents the overarching objective a district court must keep in view as it considers the Section 3553(a) factors.

The second directive of Section 3553(a) is that the district court "shall consider" all of the factors enumerated in Section 3553(a)(1) through (a)(7).[2] Pursuant to this mandate, a district court must determine how each of the factors bears on the appropriate sentence for the offender before the court. The court should give appropriate weight to each relevant factor, but the precise weight to be accorded each factor will vary depending on the facts and circumstances of the particular case.

Of course, one of the factors that a district court must "consider" is the Guidelines range. 18 U.S.C. § 3553(a)(4); *see United States v. Hazelwood*, 398 F.3d 792, 801 (6th Cir. 2005). But the court should not consider that range as presumptively containing the appropriate sentence. The Supreme Court specifically held that the *weight* to be accorded the Guidelines *is* "advisory." *United States v. Booker*, 543 U.S. 220, 245 (2005). "Advisory" weight is quite distinct from "presumptive" weight.[3] The original version of the Sentencing Reform Act would have made the Guidelines "advisory" in language much like Section 3553(a), but Section 3553(b) was added during the legislative debates in order to make the Guidelines "presumptive" rather than

---

[2]The factors are (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the purposes of the criminal punishment; (3) the kinds of sentences available; (4) the Guidelines ranger; (5) policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentencing disparity; and (7) the need to provide restitution. 18 U.S.C. § 3553(a).

[3]U.S. Sentencing Commission, Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform ("Fifteen Year Report") at 7 (2004).

advisory.[4] By excising Section 3553(b), the Supreme Court eliminated that presumption and rendered the Guidelines advisory. *Booker*, 543 U.S. at 245. As explained by the Sentencing Commission, being "advisory" means that application of the Guidelines is "voluntary," not "presumptive." Fifteen Year Report at 7.[5] Giving the Guidelines presumptive weight is no long an option in light of *Booker*.

Giving them presumptive weight is also incorrect under Section 3553(a). First, and most important, the statute's plain language precludes any argument that the Guidelines range is presumptively reasonable. The Guidelines range is one of seven factors to be considered, and nothing in the statute's language or structure suggests that it is somehow more important than the others — it is not even the first factor listed, but instead appears inconspicuously as the fourth factor on the list. There is simply no basis in the text of the statute for assigning primacy to Section 3553(a)(4). *See, e.g., Booker*, 543 U.S. at 304-05 (Scalia, J., dissenting in part) ("The statute provides no order of priority among all th[e] factors."); *United States v. Pirani*, 406 F.3d 543, 564 (8th Cir. 2005) ("[P]ost-*Booker* the correctly calculated guideline range presumably carries equal weight with the other § 3553(a) factors."). Indeed, if any factor is accorded textual primacy, it is Section 3553(a)(2) — the purposes of sentencing – which Congress expressly incorporated into the primary sentencing mandate of Section 3553(a): the sentence must be

---

[4] *Id.*; *Booker*, 543 U.S. at 293 & n.12 (Stevens, J., dissenting in part); Stith & Koh, The Politics of Sentencing Reform: The Legislative History of the Federal Sentencing Guidelines, 28 Wake Forest L. Rev. 223, 238, 245-46 (1993).

[5] *See* Fifteen Year Report at 7 ("Sentencing guidelines systems . . . range along a continuum from 'voluntary' or 'advisory,' to 'presumptive,' to 'mandatory.' The differences among them are marked by the standards governing when a judge may depart from the recommended guideline range, and the extent of appellate review of those departures.").

"sufficient, but not greater than necessary" to achieve those purposes.

**B. The purposes of sentencing are satisfied here by a 20-year sentence**

The purposes that a sentence must achieve are just punishment, general deterrence, specific deterrence, protection of the public, and rehabilitation. 18 U.S.C. § 3553(a).

**1. Just punishment**

Smith recognizes that his offense — albeit his first serious offense (his two prior convictions were for possessing and growing marijuana) and one in which he played an important, yet essentially supporting, role — was a very serious one. Twenty years is a very long sentence, and he submits that it is severe enough to serve as retribution for his offense.

As sentences go, a 20-year sentence is harsh; it takes away two decades of life as we know it. Sentencing practices reflect that a sentence of that length suffices as "just punishment" for even the gravest of crimes. The latest available statistics from the mandatory federal Guidelines sentencing regime show that offenders like Smith with a criminal-history category II, received for the gravest of all crimes — murder — an average sentence of 215 months. U.S. Sentencing Comm'n, 2003 Sourcebook of Federal Sentencing Statistics, Table 13. Their median sentence was just 125 months. *Id.* And the average sentence for murder for *all* defendants convicted of murder (regardless their criminal history) was 247 months. *Id.* Finally the average sentence for defendants convicted of kidnaping/hostage-taking and robbery (offenses like Smith's) were just 160 months and 102 months, respectively. *Id.*

Because a 20-year sentence would exceed the average sentence for a crime even graver than the one Smith committed, it would satisfy the concern for retributive justice.

**2. General deterrence**

While considering the life sentence of a "dangerous and hardened criminal" convicted of his third armed bank robbery, Judge Posner argued from crime statistics and common sense that "[p]ersons who would go ahead and rob a bank in the face of my hypothetical 20-year sentence are unlikely to be deterred by tightening the punishment screws still further." *United States v. Jackson*, 835 F.2d 1195, 1200 (7th Cir. 1987) (Posner, J., concurring). His analysis supports Smith's position that a 20-year sentence is "sufficient, but not greater than necessary" to achieve the purpose of general deterrence. 18 U.S.C. § 3553(a).

**3. Specific deterrence and protection of the public**

Unlike the defendant in *Jackson*, Smith has not proven himself to be a "hardened criminal," and he did not repeatedly and violently rob banks. True, in his early thirties he went far down a seriously wrong path when he participated in the bank robbery. He is sorry for the great pain he has caused others, is thankful he did not cause even worse harm, and wants, for his own peace of mind and dignity as a human being, to put that way of life behind him. At his sentencing hearing, Smith will show that he has bettered himself since that time; he has matured, internalized important lessons, and changed fundamentally.

Further maturation would cement this change by the time Smith would be released under a 20-year sentence. Smith was arrested on this case in 2001 at age 36. A 20-year sentence will keep him incarcerated into his fifties, when the chance of recidivism is greatly reduced. It is well-established that the "propensity to commit crimes declines with age." Patricia Corwin, *Senioritis: Why Elderly Federal Inmates are Literally Dying to Get Out of Prison*, 17 J. Contemp. Health L. & Pol'y 687, 706 (2001). While 45% of offenders released between ages 18 and 39 returned within a year to prison, just 3.2% of the 55 and above group were similarly

incarcerated. *Id.* at 706 n.169. And in the federal system 97% of elderly offenders are nonviolent. *Id.* at 706.

**C. When properly viewed, the advisory Guidelines recommend a sentence of about 20 years**

Because in prosecuting Smith the Government made an unconstitutional decision to prosecute his use of a firearm through a sentencing enhancement rather than through the pending 18 U.S.C. § 924(C) charge, the Court should — in light of *Booker* and congressional intent — consider Smith's advisory Guidelines range to be 228 – 270 months, rather than the 324 – 405 months that the Government urges. Explanation of this point requires a little background.

At his 2003 sentencing, Smith's base offense level was 20 and his criminal-history category II. The Court imposed several enhancements, increasing the offense level to 40 and rendering a Guidelines range of 324 – 405 months. One of these enhancements, § 2B3.1(b)(2)(B), added six levels for use of a firearm during the robbery. Absent that use-of-firearm enhancement, Smith's total offense level would have been 34 and his Guidelines range would have been about 15 years lower, at 168 – 210 months.

This lower range is close to the appropriate range because, in light of his liability under § 924(C), Smith never should have been subjected to the six-level enhancement. Smith was originally charged with one count of violating 18 U.S.C. § 924(C) for the use of the firearm during the offense; *had the Government not dismissed* that pending § 924(C) count before trial, it could not have sought the use-of-firearm enhancement under § 2B3.1. *See* USSG § 2K2.4, comment. n.4. A conviction under § 924(C) for the use of the firearm would have mandated a 60-month, consecutive sentence. 18 U.S.C. § 924(C) (1995). Thus, had the Government sought

to prosecute Smith for use of the gun through § 924(C) rather than through § 2B3.1, then Smith's Guidelines range would have been 228 – 270 months (that is, 168 – 210 months, plus 60 months).

*United States v. Booker* has cast new light on this § 924(C) charging decision, and, on this *Booker* remand, this Court should not ignore this illumination. By choosing to pursue the § 2B3.1 route over the § 924(C) route to prosecuting Smith for the same underlying conduct, the Government chose an unconstitutional route. That is, a perfectly constitutional route existed — namely, a jury trial to establish liability under § 924(C) — but the Government chose the unconstitutional one — a judicial factfinding hearing to establish liability under § 2B3.1(b)(2)(B). Pursuant to a prosecution free of this unconstitutional decision, Smith's Guidelines range is 228 – 270 months.

It makes sense to calculate the Guidelines based on a prosecution handled in a constitutional manner because, under the presumption of regularity, courts ordinarily must presume that a prosecutor has exercised his prosecutorial discretion constitutionally. *United States v. Armstrong*, 517 U.S. 450, 464 (1996). Here, although we know that the Government in fact chose the unconstitutional route, there is no reason to perpetuate the effect of that unconstitutional decision when calculating *advisory* guidelines. When now seeking the advice of the Guidelines, rather than the factual dictate of mandatory Guidelines, the court should presume a prosecutor acting in accordance with the Constitution, and thus it should consider Smith's Guidelines range incorporating a § 924(C) conviction rather than a § 2B3.1 enhancement. That properly calculated range is 228 – 270 months, a range that straddles the 20-year mark.

Importantly, this approach harmonizes with Congressional intent. By enacting § 924(C),

Congress expressed its clear intent that the use of a firearm during a crime of violence, such as bank robbery, carry a five-year sentence — no less and *no more*. 18 U.S.C. § 924(C) (1995). But where, as here, § 2B3.1(b)(2)(B) is applied in the upper reaches of the Guidelines grid, it produces a sentencing enhancement far in excess of five years — in Smith's case, it produced an enhancement of 159 – 195 months, or about 15 years, rather than Congress's five. This Court should take into account that Congress legislated an enhancement just one-third the length of the one that the Government now asks this Court to impose. The Guidelines advise a sentence within the 228 – 270 month range.

**D. The need to avoid unwarranted sentencing disparities**

Thomas Nichols played the same supporting role to Douglas Daigle in a Chattanooga bank robbery as Smith played to Daigle in the Clarksville robbery. For that conduct, Nichols was prosecuted in the Eastern District of Tennessee for bank robbery, money laundering, and violating § 924(C). His criminal history was worse than Smith's. Yet he was sentenced to far less time than Smith: 295 months, or about 24 and a half years.

Significantly, it appears that, since Nichols was convicted of a § 924(C) count, he was not given the six-level § 2B3.1 enhancement for the use of a firearm. That is, it appears Nichols's use-of-firearm conduct was prosecuted constitutionally. The difference between Nichols's Guidelines range and that of Smith is explained by the fact that Nichols' prosecution was constitutional with respect to the use of the firearm, but Smith's was not. This difference cannot justify giving Smith a sentence over nine years longer than Nichols's.

Similarly, John Crisp was prosecuted in the Eastern District of Tennessee for his substantial involvement in both the Chattanooga and Knoxville robberies. Although the

Clarksville robbery with which Smith assisted was violent, these other two robberies were more violent, with one involving a child being bound. His criminal history was much worse than Smith's. He was sentenced to 627 months, or about 26 years per robbery.

The Government seeks a sentence for Smith of 33 and a half years. Smith's punishment for the single robbery should not be higher than that of Nichols or Crisp. Indeed, because this was his first serious or violent offense, his sentence should be less. It is certainly wrongful to impose on Smith a sentence higher than Nichols as a consequence of the Government handling his prosecution in an unconstitutional manner. Accordingly, he submits that a sentence of 20 years for his role in the single robbery would be appropriate.

### E. Conclusion

The parsimony principle requires imposition of a sentence no greater than necessary to satisfy sentencing purposes, and here it is reasonable to conclude that a 20-year sentence does so. The Guidelines, when properly considered through the lens of *Booker* and Congress's express intent regarding § 924(C), advise a sentence of about 20 years. A comparison of Smith with his more criminally active co-defendants indicates that a sentence of 20 years is reasonable. Accordingly, Smith respectfully requests that this Court impose on him a sentence of 20 years.

## II. In the alternative, the Due Process Clause caps Smith's sentence at 46 months.

The Due Process Clause prohibits a court from doing through judicial construction what legislatures cannot themselves do without violating the *Ex Post Facto* Clause: alter and apply a criminal punishment to a defendant's disadvantage after the crime was committed. *See Bouie v. City of Columbia*, 378 U.S. 347, 354 (1964) ("If a judicial construction of a criminal statute is 'unexpected and indefensible by reference to the law which had been expressed prior to the

conduct in issue,' [the construction] must not be given retroactive effect."); *Marks v. United States*, 430 U.S. 188, 191-92 (1977) (holding that due process protects against judicial infringement of the right to "fair warning" that certain conduct will give rise to criminal penalties).

In 2003, Smith's Guidelines range was calculated as 37 – 46 months, absent any enhancements to his offense level. Enhancements increased his maximum permissible sentence from 46 months up to 405 months. On remand, it must be undisputed that he is entitled to the application of *Booker*'s holding that enhancements under a mandatory Guidelines regime are unconstitutional, and so under a mandatory regime his statutory maximum would be 46 months.

However, the Government, in order to authorize a sentence of 405 months, asks the Court to sentence Smith under the advisory Guideline regime that *Booker* created long after Smith committed the offense and was convicted. To do so would violate Smith's right under the Due Process Clause against the retroactive imposition of an adverse judicial interpretation of criminal law. *See Bouie*, 378 U.S. at 354; *Marks*, 430 U.S. at 191-92. Because being sentenced under the newly fashioned advisory Guidelines regime could adversely impact him, the Due Process clause entitles Smith to being sentenced on remand under the mandatory Guidelines regime (with a statutory maximum of 46 months).

The Sixth Circuit has rejected this retroactivity argument. *See United States v. Barton*, 455 F.3d 649 (6th Cir. 2006). Smith raises it to preserve it for *en banc* Sixth Circuit or Supreme Court review.

## Conclusion

Smith participated in a very serious crime. But it was his first such offense, and a severe sentence of 20 years is sufficient punishment for it. Indeed, had he been prosecuted in accordance with the Constitution, he, like his co-defendant Thomas Nichols with a worse criminal record, would have received a sentence near that mark. He respectfully moves this Court to impose on him a 20-year sentence.

Respectfully submitted,

s/ *C. Douglas Thoresen*

C. DOUGLAS THORESEN
Assistant Federal Public Defender
810 Broadway, Suite 200
Nashville, TN 37203
615-736-5047
E-mail: doug_thoresen@fd.org
Attorney for Carlton V. Smith

## CERTIFICATE OF SERVICE

I hereby certify that on November 3, 2006, I electronically filed the foregoing *Defendant's Sentencing Memorandum* with the clerk of the court by using the CM/ECF system, which will send a Notice of Electronic Filing to the following: William Cohen, Assistant United States Attorney, 110 Ninth Avenue South, Suite A961, Nashville, TN 37203.

s/ *C. Douglas Thoresen*

C. DOUGLAS THORESEN